IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERNEST MARTIN,                          )
                                        ) Civil Action
                Plaintiff               ) No. 12-cv-03665
                                        )
        v.                              )
                                        )
CITY OF READING;                        )
READING POLICE DEPARTMENT;              )
WILLIAM HEIM, CHIEF OF POLICE OF        )
  THE READING POLICE, individually      )
  and in his official capacity;         )
OFFICER BRIAN ERRINGTON, individually   )
  and in his official capacity,         )
CAPTAIN DAMON KLOC, individually and    )
  in his official capacity,             )
JOHN DOE 1 through JOHN DOE 7;          )
PENNSYLVANIA STATE TROOPER MICHAEL      )
  PAVELKO, individually; and            )
JOHN DOE 8 and JOHN DOE 9,              )
                                        )
                Defendants              )

                        *     *     *


APPEARANCES:

            EDITH A. PEARCE, ESQUIRE
            WILLIAM J. RINGLAND, ESQUIRE
                On Behalf of Plaintiff

            DAVID J. MacMAIN, ESQUIRE
                On Behalf of Defendants City of
                Reading; Reading Police Department;
                William Heim, Chief of Police of the
                Reading Police; Officer Brian Erring-
                ton; and Captain Damon Kloc

            ANTHONY P VENDITTI, ESQUIRE
                On Behalf of Defendant Pennsylvania
                State Trooper Michael Pavelko

                        *     *     *

# **O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge

This matter is before the court on [Defendant] Michael Pavelko's Motion to Dismiss ("Motion to Dismiss of Trooper Pavelko");[1] and Defendants City of Reading, Chief William Heim, Officer Brian Errington, and Captain Damon Kloc's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), which motions were filed January 28, 2013 ("Motion to Dismiss of Reading Defendants").[2]

---

[1]  The Motion to Dismiss of Trooper Pavelko (Document 31) was filed together with a Memorandum of Law in Support of Michael Pavelko's Motion to Dismiss Plaintiff's Amended Complaint (Document 31)("Pavelko Memorandum"), and Exhibit A, a copy of the docket entries in the Court of Common Pleas of Berks County, Pennsylvania, in <u>Commonwealth of Pennsylvania v. Ernest Emmanuel Martin</u>, Criminal Docket No. CP-06-CR-0004948-2012 as of January 24, 2013 (Document 31-1).

On February 11, 2013, Plaintiff Ernest Martin's Response to Defendant Michael Pavelko's Motion to Dismiss Plaintiff's Amended Complaint (Document 36)("Plaintiff's Response to Motion to Dismiss of Trooper Pavelko") was filed, together with Plaintiff Ernest Martin's Memorandum of Law in Support of Plaintiff's Response to Defendant Michael Pavelko's Motion to Dismiss Plaintiff's Amended Complaint (Document 36)("Plaintiff's Memorandum in Opposition to Motion of Trooper Pavelko").

[2]  The Motion to Dismiss of Reading Defendants (Document 32) was filed together with a Brief In Support Of Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)(Document 32-1) ("Reading Defendants' Brief"), and Exhibit A, an electronic copy of the docket entries in the Court of Common Pleas of Berks County, Pennsylvania, in <u>Commonwealth of Pennsylvania v. Ernest Emmanuel Martin</u>, Criminal Docket No. CP-06-CR-0004948-2012 as of January 24, 2013 (Document 31-1).

On February 11, 2013, Plaintiff Ernest Martin's Response to Defendants City Of Reading, Chief William Heim, Officer Brian Errington, and Captain Damon Kloc's Motion to Dismiss Plaintiff's Amended Complaint (Document 35)("Plaintiff's Response to Motion to Dismiss of Reading Defendants") was filed, together with Plaintiff Ernest Martin's Memorandum Of Law in Support Of Plaintiff's Response to Defendants City Of Reading, Chief William Heim, Officer Brian Errington, and Captain Damon Kloc's Motion To Dismiss Plaintiff's Amended Complaint ("Plaintiff's Memorandum in Opposition to Motion of Reading Defendants").

## SUMMARY OF DECISION

In the within action, plaintiff Ernest Martin asserts federal civil rights and state tort claims against defendants City of Reading; Reading Police Department; William Heim, Chief of Police of the Reading Police ("Chief Heim"); Officer Brian Errington ("Officer Errington"); Captain Damon Kloc ("Captain Kloc"); and Pennsylvania State Trooper Michael Pavelko ("Trooper Pavelko"), as well as nine John Doe defendants.

Plaintiff's claims arise from an incident on April 19, 2012. Plaintiff alleges that while he was on a highway bypass, defendant Officer Errington fired a Taser stun gun at him, as a result of which he fell off the highway bridge and sustained catastrophic injuries. Plaintiff contends that the use of force by defendant Officer Errington was illegal and excessive. Plaintiff further alleges that after the incident, defendants conspired to cover up that misconduct through an improper investigation and criminal prosecution of plaintiff.[3]

---

[3] Pursuant to the applicable standard of review described below, at this stage of the litigation I am required to accept plaintiff's factual allegations as true, and I do so in considering the within motions to dismiss. Nonetheless, I note that the factual averments in plaintiff's Amended Complaint concerning the incident begin with plaintiff being Tasered and falling off of the highway bypass. Plaintiff does not include factual averments concerning the events, if any, which occurred prior to that moment.

Although for purposes of this motion, I cannot accept as true the version of events offered in the Reading Defendants' Brief, they bear mentioning as a matter of contrast: "Plaintiff, after stealing a car, fleeing from responding Reading Police Officers, engaging in a high speed pursuit,

(Footnote 3 continued):

The within motions to dismiss each seek to dismiss plaintiff's Amended Complaint in its entirety. For the reasons expressed below, the Motion to Dismiss of the Reading Defendants and the Motion to Dismiss of Trooper Pavelko are each granted in part and denied in part.

Specifically, the Motion to Dismiss of the Reading Defendants is granted as unopposed to the extent that it seeks to dismiss plaintiff's claims for violation of his rights under the Eighth Amendment to the United States Constitution, and, accordingly, I dismiss Count II from the Amended Complaint in its entirety, and I dismiss Count III to the extent that it asserts a claim based upon the Eighth Amendment.

Moreover, the Motion to Dismiss of Trooper Pavelko is granted to the extent that it seeks to dismiss plaintiff's Pennsylvania state-law claims against Trooper Pavelko for defamation, false-light invasion of privacy, and intentional infliction of emotional distress based upon sovereign immunity.

---

(Continuation of footnote 3):

smash[ed] into innocent motorists...." (Reading Defendants' Brief at page 1.) The Reading Defendants' Brief goes on to state:

> Plaintiff then fled on foot, running through traffic on [Route] 422. Officer Errington warned Plaintif three times that if he did not stop, he would be Tased. When Plaintiff was several feet from the outer railing/abutment, Officer Errington fired his Taser, which did not connect. Thereafter, Plaintiff took several additional steps over to [the] outer railing/abutment, leaned on the bridge with his hands, and jumped over the side of the bridge, falling 50' below and landing several feet short of the Schuykill River on a driveway/fishing pier.

(Id.)

-4-

Accordingly, I dismiss only those claims against defendant Trooper Pavelko from Count VI of the Amended Complaint.[4]

However, the Motion to Dismiss of the Reading Defendants and the Motion to Dismiss of Trooper Pavelko are denied in all other respects.

## JURISDICTION

This court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 concerning plaintiff's federal causes of action. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) concerning plaintiff's pendent state-law claims.

## VENUE

Venue is proper for all defendants pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to plaintiff's claims occurred in West Reading, Berks County, Pennsylvania, which is located within this judicial district.

## PROCEDURAL HISTORY

Plaintiff initiated this action on June 28, 2012 by filing a Civil Action Complaint ("Complaint") in this court against the following defendants: City of Reading; Reading

---

[4]    Count VI of the Amended Complaint alleges defamation, casting in a false light invasion of privacy, and intentional infliction of emotional distress under Pennsylvania state law against all defendants. Only those claims against Trooper Pavelko are dismissed from the Amended Complaint. Those claims against the remaining defendants remain in Count VI.

Police Department; William Heim, Chief of Police of the Reading Police ("Chief Heim"); The Commonwealth of Pennsylvania; Pennsylvania State Police; Captain Dante Orlandi ("Captain Orlandi"), Commanding Officer of Pennsylvania State Police Troop L; and twelve John Doe defendants (ten of them from the Reading Police Department, and two of them from the Pennsylvania State Police).[5]

On August 28, 2012 defendants City of Reading, Reading Police Department answered plaintiff's Complaint and asserted affirmative defenses to plaintiff's claims.[6]

On September 7, 2012 defendants The Commonwealth of Pennsylvania, Pennsylvania State Police, and Captain Orlandi filed a motion seeking to dismiss plaintiff's Complaint.

On November 2, 2012 plaintiff filed an amended Civil Action Complaint ("Amended Complaint").[7] In his Amended Complaint, plaintiff did not include the Commonwealth of Pennsylvania and Pennsylvania State Police as defendants,[8] nor did the Amended Complaint include Captain Dante Orlandi, or the

---

[5]        Complaint filed June 28, 2012 (Document 1) at pages 1-3.

[6]        Answer and Affirmative Defenses of Defendants City or Reading, Reading Police Department, and Chief William Heim, which answer was filed August 28, 2012 (Document 11).

[7]        [Amended] Civil Action Complaint filed November 2, 2012 (Document 21.)

[8]        Accordingly, the Clerk of Court terminated The Commonwealth of Pennsylvania and Pennsylvania State Police from this action as defendants.

Commanding Officer of Pennsylvania State Police Troop L as defendants.

The Amended Complaint added defendant Officer Brian Errington ("Officer Errington"), defendant Captain Damom Kloc ("Captain Kloc"), and defendant Pennsylvania State Trooper Michael Pavelko ("Trooper Pavelko"). The Amended Complaint also names nine John Doe defendants instead of twelve (seven of them from the Reading Police Department, and two of them from the Pennsylvania State Police).[9]

On November 15, 2012 Captain Orlandi filed Dante Orlandi's Motion to Dismiss plaintiff's claims against him from the Amended Complaint.[10]

As noted above, the Motion to Dismiss of Trooper Pavelko and the Motion to Dismiss of Reading Defendants were each filed on January 28, 2013.

By Order dated January 29, 2013 and filed January 30, 2013, I approved a stipulation withdrawing all of plaintiff's claims against Captain Orlandi and dismissed Captain Orlandi from this action as a defendant.[11]

---

[9]    Amended Complaint at pages 1-2.

[10]    See Document 23.

[11]    See Document 34.

On February 11, 2013 plaintiff responded in opposition to the Motion to Dismiss of Trooper Pavelko and the Motion to Dismiss of Reading Defendants.

By Order dated August 21, 2013 and filed August 22, 2013, I provided the parties with an opportunity provide supplemental briefs concerning the status of plaintiff's state-court criminal proceedings because the Motion to Dismiss of Trooper Pavelko and the Motion to Dismiss of Reading Defendants each contend that plaintiff's Amended Complaint should be dismissed based upon Younger abstention[12] in light of plaintiffs' state-court criminal proceedings.[13] The parties each filed supplemental briefing in response to the August 21, 2013 Order.[14]

---

[12] See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

[13] Order of the undersigned dated August 21, 2013 and filed August 22, 2013 (Document 39).

[14] On August 30, 2013 the following were supplemental papers were filed:

Supplemental Brief in Support of [Reading] Defendants' Motion to Dismiss Plaintiff's [Amended] Complaint (Document 40) ("Reading Supplemental Brief") was filed, together with

Exhibit A, copy of transcript of Plea and Sentence in Commonwealth of Pennsylvania v. Ernest Martin, Docket No. CP-06-CR-4948-2012 held on May 16, 2013 before the Honorable Scott D. Keller in the Court of Common Pleas of Berks County, Pennsylvania (Document 40-1)("Plaintiff's Plea and Sentence Transcript");

Plaintiff Ernest Martin's Brief with Regard to the Status of the State-Court Criminal Proceedings Against Plaintiff and in Support of Plaintiff's Response in Opposition to Defendants' Motions for

(Footnote 14 continued):

Hence this Opinion.

## **STANDARD OF REVIEW**

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

---

(Continuation of footnote 14):

> Dismissal of Plaintiff's Amended Complaint (Document 42) ("Plaintiff's Supplemental Brief") was filed, together with
>
>> Exhibit A, a copy of the Amended Complaint (Document 42-1); and
>>
>> Exhibit B, a copy of the docket entries in the Court of Common Pleas of Berks County, Pennsylvania, in Commonwealth of Pennsylvania v. Ernest Emmanuel Martin, Criminal Docket No. CP-06-CR-0004948-2012 as of August 29, 2013 (Document 42-2); and
>
> [Trooper Pavelko's] Status Update of Plaintiff's State Court Proceedings (Document 43)("Pavelko Supplemental Brief"), together with
>
>> Exhibit A, a copy of the docket entries in the Court of Common Pleas of Berks County, Pennsylvania, in Commonwealth of Pennsylvania v. Ernest Emmanuel Martin, Criminal Docket No. CP-06-CR-0004948-2012 as of August 23, 2013 (Document 43-1).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief". Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[15]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (<u>citing</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. <u>Phillips</u>, 515 F.3d at 231.

---

[15] The Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009). This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (<u>quoting</u> <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234 (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion. First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted. Fowler, 578 F.3d at 210. Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded. Id. at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 211 (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible." Iqbal, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those

facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## FACTS

Based upon the averments in plaintiff's [Amended] Civil Action Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

### April 19, 2012 Incident and Investigation

On April 19, 2012 defendant Officer Brian Errington and defendant Captain Damon Kloc caused plaintiff to fall from the West Shore Bypass in West Reading, Pennsylvania when Officer Errington attacked plaintiff and shot him with a Taser, or stun gun. Plaintiff fell from the bypass and landed on the concrete approximately 40 feet below the West Shore Bypass.[16] Plaintiff sustained serious injuries and was hospitalized for several months as the result of this fall.[17]

On April 19, 2012, shortly after plaintiff "was [T]asered over the edge of the bridge" Captain Orlandi, Commanding officer of Troop L of the Pennsylvania State Police began an investigation into the circumstances surrounding plaintiff's fall, with the assistance of defendant Trooper

---

[16]        Amended Complaint at ¶ 29.

[17]        Id. at ¶ 30.

-12-

Pavelko, other members of the Pennsylvania State Police named in this action as John Doe defendants, defendant Chief Heim, Captain Kloc, Officer Errington, and other members of the Reading Police Department named in this action as John Doe defendants.[18]

These defendants acted and conspired to cover-up and hide the facts surrounding the true cause of plaintiff's fall from the bridge by, among other things, (1) failing to preserve physical evidence at the scene; (2) failing to obtain the names and contact information of eyewitnesses at the scene; and (3) threatening a witness with criminal perjury charges if the witness would not corroborate defendants' allegedly-false version of the events leading to plaintiff's fall. Defendants took these actions for the purpose of violating plaintiff's civil rights and to interfere with plaintiff's ability to assert a claim based upon the fall and his injuries.[19]

On April 19, 2012 defendants informed local media outlets, including the Reading Eagle Newspaper and Channel 69 Television News, that plaintiff intentionally jumped off of the West Shore Bypass, despite knowing that to be false.[20]

---

[18]      Amended Complaint at ¶ 33.

[19]      Id. at ¶ 33.

[20]      Id. at ¶¶ 41-42, 45.

## State Criminal Proceeding

Criminal charges were initiated against plaintiff following the April 19, 2012 incident which gave rise to this action. Specifically, criminal proceedings against plaintiff were initiated by the filing of a criminal complaint in the Court of Common Pleas of Berks County, Pennsylvania on May 7, 2012.[21]

The criminal docket entries indicate an offense date of "04/19/2012" (the same date as the event giving rise to this federal civil rights action) for the following charged offenses, among others: Theft by unlawful taking (movable property) in violation of 18 Pa.C.S.A. § 3921; Receiving stolen property in violation of § 3925; Flight to avoid apprehension, trial, or punishment in violation of § 5126; Recklessly endangering another person in violation of § 2705; Resisting arrest in violation of § 5104; Fleeing or attempting to elude officer in violation of 75 Pa.C.S.A. § 3733; Accident involving damage to attended vehicle or property in violation of § 3743; Failure to stop at red signal in violation of § 3112; Unsafe movement (passing on right) in violation of § 3304; and Reckless driving in violation of § 3736.

---

[21]    See Reading Defendants' Motion, Exhibit A, Criminal Docket Entries in Commonwealth of Pennsylvania v. Ernest Emmanuel Martin, Criminal Docket No. CP-06-CR-0004948-2012 in the Court of Common Pleas of Berks County, Pennsylvania.

On May 16, 2013 plaintiff entered pleas of nolo contendere[22] to the charges of Theft by unlawful taking (movable property) in violation of 18 Pa.C.S.A. § 3921, Flight to avoid apprehension, trial, or punishment in violation of § 5126, and Driving while operating privileges are suspended or revoked in violation of 75 Pa.C.S.A. § 1543(a).[23] Plaintiff was sentenced to a term of not less than 1 year nor more than 3 years imprisonment for the Theft count; not less than 18 months nor more than 36 months imprisonment for the Flight count; and no further penalty for Driving while operating privileges are suspended or revoked.[24] No direct or collateral appeal was filed concerning plaintiff's underlying state-court criminal conviction or sentence.

---

[22] "A plea of nolo contendere is 'a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty.'" Commonwealth of Pennsylvania v. Lewis, 791 A.2d 1227, 1234 (Pa.Super.Ct. 2002)(quoting North Carolina v. Alford, 400 U.S. 25, 36, 91 S.Ct. 160, 167, 27 L.Ed.2d 162, 170 (1970)).

[23] Criminal Docket in Commonwealth of Pennsylvania v. Ernest Emanuel Martin, Berks County Court of Common Pleas Docket No. CP-06-CR-0004948-2012, at pages 4-5; see Reading Defendants' Supplemental Brief at page 1; Plaintiff's Supplemental Brief at page 4; Pavelko Supplemental Brief at page 2.

[24] Criminal Docket in Commonwealth of Pennsylvania v. Ernest Emanuel Martin, Berks County Court of Common Pleas Docket No. CP-06-CR-0004948-2012, at pages 4-5; see Reading Defendants' Supplemental Brief, Exhibit A, Plaintiff's Plea and Sentence Transcript at pages 10-11; Pavelko Supplemental Brief at page 2.

## PLAINTIFF'S CLAIMS

Plaintiff asserts various federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as Pennsylvania state-law claims.

Specifically, plaintiff claims that defendants City of Reading, Reading Police Department, Chief Heim, Officer Errington, and Captain Kloc violated plaintiff's rights under the Fourth and Fourteenth Amendments (Count I)[25] and the Eighth Amendment (Count II) to the United States Constitution.[26] Moreover, plaintiff alleges that those defendants -- with the exception of Officer Errington -- viol-ated plaintiff's Fourth, Eighth, and Fourteenth Amendment rights through their deliberate indifference to plaintiff's rights and by maintaining, or tolerating, certain policies and practices (Count III).[27]

In addition, plaintiff asserts Pennsylvania state-law tort claims against defendant Officer Errington for assault, battery, and intentional infliction of emotional distress (Count IV).[28]

Plaintiff further asserts a claim against all defendants pursuant to section 1983 alleging that each defendant

---

[25]     See Amended Complaint at ¶¶ 49-60.

[26]     See id. at ¶¶ 61-71.

[27]     See id. at ¶¶ 72-84.

[28]     See id. at ¶¶ 85-94.

violated his "well settled-rights to personal liberty under the Fourteenth Amendment" by (1) obstructing justice, (2) improperly interfering with an official investigation; (3) tampering with, intimidating, and failing to properly interview a witness; (4) depriving plaintiff of rights guaranteed by Pennsylvania state law and the Constitution of the Commonwealth of Pennsylvania; (5) failing to properly collect, preserve, and report evidence at a crime scene; and (6) conspiring to take the actions described above in (1) through (5) (Count V).[29]

Finally, plaintiff asserts Pennsylvania state-law claims against all defendants for defamation, false-light invasion of privacy, and intentional infliction of emotional distress (Count VI).[30]

Plaintiff seeks both compensatory and punitive damages, declaratory and injunctive relief, and attorney fees and costs.[31]

---

[29]      See Amended Complaint at ¶ 97a.-l.

[30]      See id. at ¶¶ 103-110.

[31]      Id. at page 27.  As injunctive relief, plaintiff seeks to have this court "enjoin Defendants from subjecting Plaintiff to practices that violate his rights including but not limited to conducting any investigation(s) into any of the facts or circumstances set[]forth in the [Amended Complaint], including but not limited to any alleged criminal conduct committed by Plaintiff".

Plaintiff further seeks to have this court order "that such investigation(s) be assigned to a third-party government agency."

(Footnote 31 continued):

## DISCUSSION

### Eighth Amendment Claims

Defendants City of Reading, Reading Police Department, Chief Heim, Officer Errington, and Captain Damon Kloc (together, "Reading Defendants") contend that plaintiff's Amended Complaint fails to state a claim pursuant to 42 U.S.C. § 1983 in Counts II and III for violation of his federal Eighth Amendment right not to be subjected to cruel and unusual punishment.

Specifically, the Reading Defendants contend that the cruel and unusual punishment clause of the Eighth Amendment does not apply until after a defendant has been convicted and sentenced for a crime. They contend that, because plaintiff does not allege that he was convicted and sentenced as the result of the conduct underlying this civil action, his section 1983 Eighth Amendment claims must be dismissed.

In response, plaintiff requests that the court allow him to withdraw his Eighth Amendment claims in Count II without prejudice to raise such a claim at a later date.[32] I interpret

---

(Continuation of footnote 31):

     Plaintiff did not file a motion seeking a preliminary injunction in this matter. Accordingly, the issue of whether, and what, injunctive relief is proper will be addressed if plaintiff prevails on some, or all, of his claims asserted in this matter.

[32]     Specifically, plaintiff responds to both the Reading Motion and the Pavelko Motion by stating, that "Plaintiff respectfully requests this Honorable Court to allow Plaintiff to withdraw said [Eight Amendment] claims,

(Footnote 32 continued):

-18-

plaintiff's request to withdraw his Eighth Amendment claims asserted in the Amended Complaint as an acknowledgement by plaintiff that the Amended Complaint does not, as pled, state any section 1983 Eighth Amendment claim upon which relief may be granted.

Therefore, I grant the Reading Motion to Dismiss as unopposed to the extent that the motion contends that plaintiff has not stated an Eighth Amendment claim in his Amended Complaint.

Accordingly, I dismiss Count II of the Amended Complaint in its entirety, and I dismiss plaintiff's section 1983 Eighth Amendment claims from Count III of the Amended Complaint without prejudice for plaintiff to assert such claims if, and when, appropriate within the applicable statute of limitations.

## *Younger* Abstention

The Reading Defendants contend that plaintiff's Amended Complaint should be dismissed, in its entirety, based upon the Younger[33] abstention doctrine.  The Reading Defendants

---

(Continuation of footnote 32):

without prejudice, granting Plaintiff leave to file an amended complaint to reassert such claims at a later date."  (Plaintiff's Memorandum Opposing Reading Motion at pages 8-9; Plaintiff's Memorandum Opposing Pavelko Motion at pages 15-16.)

[33]        See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

alternatively request that, if the court does not dismiss this case entirely based upon Younger, the case should be placed in civil suspense pending resolution of plaintiff's underlying criminal case, including "exhaustion of all possible appeals".[34] Similarly, defendant Trooper Pavelko contends that plaintiff's claims should be dismissed based upon Younger abstention.[35]

Federal courts have a "virtually unflagging" obligation to adjudicate claims within their jurisdiction and "[have] no authority to abstain from the exercise of jurisdiction that has been properly conferred." Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1199 (3d Cir. 1992)(quoting New Orleans Public Service, Inc. v. Council of New Orleans, 491 U.S. 350, 358-359, 109 S.Ct. 2506, 2512-13, 105 L.Ed.2d 298, 310-311 (1989)("NOPCI").

However, "federal courts do have discretion in determining whether to grant certain types of relief". Id. Accordingly, "abstention is appropriate in a few carefully defined situations." Id. Nonetheless, abstention is "the exception, not the rule." Id. (quoting Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, 495 (1976)).

---

[34]     Reading Defendants' Brief at pages 4-7.

[35]     Pavelko Memorandum at pages 7-8.

-20-

As the United States Court of Appeals for the Third Circuit has explained, "[a] federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court could offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, (3d Cir. 2005)(citing Younger, supra).

The Third Circuit has further explained that "Younger abstention is only appropriate where the following three requirements are satisfied: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." Addiction Specialists, 411 F.3d at 408.

Rule 903 of the Pennsylvania Rules of Appellate Procedure governs the time in which a direct appeal must be taken, and provides: "In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court." Pa.R.App.P. 903(c)(3).

Here, plaintiff did not file any post-trial motions in his state-court criminal proceeding where he entered a plea of nolo contendere and was sentenced on May 16, 2013. Accordingly, plaintiff would have had until June 17, 2013 to file a direct

-21-

appeal.[36]  Plaintiff did not file a direct appeal concerning his state court sentence; nor has he filed a collateral attack on his state sentence.  Accordingly, at this time, plaintiff's state court criminal proceedings are no longer ongoing. Therefore, the first requirement for Younger abstention is not satisfied.  As a result, the motions to dismiss are denied to the extent that they rely upon Younger.

### Allegations of Constitutional Violations

### Against Trooper Pavelko

In support of his motion to dismiss, defendant Trooper Pavelko contends that plaintiff's claims against him pursuant to 42 U.S.C § 1983 must be dismissed because the Amended Complaint does not allege a constitutional violation by Trooper Pavelko.[37]

Specifically, Trooper Pavelko argues that the Pennsylvania State Police were called to "investigate the automobile accident that led to plaintiff jumping off the overpass" and, as part of that investigation, Trooper Pavelko compiled police reports from Reading and West Reading police officers and "interviewed several witnesses, vehicle operators, who witnessed plaintiff cause an automobile accident while fleeing from police."

---

[36]       Because the thirtieth day fell on Saturday, June 15, 2013, plaintiff's deadline to file his direct appeal became Monday, June 17, 2013. See Pa.R.Civ.P. 106.

[37]       Pavelko Memorandum at pages 4-6.

Trooper Pavelko further contends that "[w]hether the information contained in the police reports is true or, as alleged, has been falsified, (which is in no way admitted here) is immaterial. The resulting reports did not create a violation of constitutional magnitude...."[38]

More specifically, Trooper Pavelko argues that plaintiff has not sufficiently pled a constitutional claim against him pursuant to 42 U.S.C. § 1983 because "there is no constitutional right to a true police report"[39] and "there is no fundamental liberty interest in having police perform a proper, impartial accident investigation."[40]

Trooper Pavelko relies upon <u>Bush v. City of Philadelphia</u> in support of the latter proposition.[41] <u>Bush</u> is distinguishable from this case. There, plaintiff Raymond Bush was involved in an automobile accident allegedly caused by defendant William Jordan, a Philadelphia police officer.

---

[38]      Pavelko Memorandum at page 6.

          The parties clearly have very different versions of the events which ultimately resulted in plaintiff's injuries. However, under the applicable standard of review discussed above, I am required to accept plaintiff's factual averments as true for purposes of these motions to dismiss. The facts, as alleged by plaintiff, do not involve him fleeing from the police, causing (or being involved in) an automobile accident, or purposefully jumping from the West Shore Bypass.

[39]      <u>Id.</u> at page 5.

[40]      <u>Id.</u> at page 5 (quoting <u>Bush v. City of Philadelphia</u>, 1999 WL 554585, at *7 (E.D.Pa. July 15, 1999)(Hart, M.J.)).

[41]      <u>Id.</u> at page 5 (quoting <u>Bush</u>, 1999 WL 554585, at *7).

Mr. Bush claimed that Officer Jordan and the police officer who responded to the accident, Donna Druckenfield, violated (and conspired to violate) his due process and equal protection rights by preparing and filing a false accident report (which identified Mr. Bush as the responsible party), by intimidating Mr. Bush, and by failing to enforce Pennsylvania motor vehicle laws against Officer Jordan.  Bush, 1999 WL 554585, at *1-3.

In granting summary judgment in favor of Officer Druckenfield with respect to Mr. Bush's due process and equal protection claims under section 1983, the court stated that

> [c]ases decided in this court and elsewhere show that conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation. It provides the basis for a § 1983 action only if it results in some constitutional harm to the plaintiff.

Bush, 1999 WL 554585, at *4.

In Bush, the court concluded that no reasonable jury could find that Mr. Bush suffered any such constitutional harm because "Bush was not touched by any officer, he was not arrested; he was not cited for any traffic violations; he was not even prevented from suing [Officer] Jordan for damages." Id.

Here, by contrast, plaintiff alleges that he was seriously harmed by the allegedly excessive force used and the

alleged agreement among, and subsequent actions by, defendants to cover up that purported misconduct. Moreover, the docket entries in plaintiff's state-court criminal proceeding (initially provided as Exhibit A by Trooper Pavelko, and since supplemented by the parties) demonstrate that, at least in part because of Trooper Pavelko's conduct, plaintiff was arrested, held in custody, charged with numerous criminal offenses, and is serving a term of imprisonment after entering pleas of nolo contendere to certain of those criminal charges. Accordingly, I conclude that <u>Bush</u> does not provide persuasive support for the Motion to Dismiss of Trooper Pavelkpo.

In further support of his argument that plaintiff has not sufficiently alleged constitutional violations against him, Trooper Pavelko quotes the United States Court of Appeals for the First Circuit in <u>Landrigan v. Warwick</u>, 628 F.2d 736, 744 (1st Cir. 1980), as follows: "We do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution."[42]

The next sentence in <u>Landrigan</u>, which Trooper Pavelko does not quote,[43] reads: "If action is subsequently taken on the basis of that report, or if the report is disseminated in some

---

[42]     Pavelko Memorandum at pages 5-6.

[43]     See <u>id.</u> at pages 5-6.

manner, plaintiff's constitutional rights may well then be violated, and in that event a section 1983 action may lie." Landrigan, 628 F.2d at 744.

The court in Bush quoted both of the above sentences from Landrigan and stated that Landrigan "spelled out explicitly" that a bad police investigation is actionable under section 1983 only if it results in a deprivation of some right. Bush, 1999 WL 554585, at *4; see also Jarrett v. Township of Bensalem, 2008 WL 818615, at 3-4 (E.D.Pa. March 26, 2008) (Schiller, J.).[44]

Similarly, in White v. Tamlyn, 961 F.Supp. 1047 (E.D.Mich. 1997), the district court stated that the filing of false police reports "alone does not itself deprive a person of a constitutional right under the Fourteenth Amendment. Such action only constitutes a due process violation when the falsified reports lead to an unconstitutional deprivation of life, liberty, or property." 961 F.Supp. at 1056, cited with approval in Bush, 1999 WL 554585, at *5.

Here, plaintiff does not aver that Trooper Pavelko simply generated and filed a police report containing false information and that nothing more came of the report -- that it

---

[44]    "While there is no constitutional right to an accurate police report, there is a constitutional right to be free from the consequences of a false report, if...those consequences constitute a deprivation of life, liberty, or property." Jarrett, 2008 WL 818615, at *4 (quoting Bush, 1999 WL 554585, at *5)(internal quotations omitted).

-26-

was merely "a false police report, sitting in a drawer in a police station". <u>Landrigan</u>, 628 F.2d at 744. Indeed, the criminal docket entries for plaintiff's state-court criminal case, which Trooper Pavelko attached as Exhibit A in support of his motion to dismiss, identify Trooper Pavelko as the arresting officer.[45]

In short, Trooper Pavelko's argument that plaintiff's constitutional claims against him should be dismissed based upon insufficient pleading is unavailing because plaintiff's averments, taken as true for purposes of these motions to dismiss, and the public records submitted, support a plausible inference that Trooper Paveklo's conduct caused deprivations of plaintiff's liberty through plaintiff's arrest and criminal prosecution arising from the April 19, 2012 incident which also gave rise to this action. Accordingly, the Motion to Dismiss of Trooper Pavelko is denied in that respect.

### Sovereign Immunity

Defendant Trooper Pavelko contends that plaintiff's state-constitutional claims and state-law tort claims for defamation, false-light invasion of privacy, and intentional

---

[45]     <u>See</u> Motion to Dismiss of Trooper Pavelko, Exhibit A.

infliction of emotional distress must be dismissed based upon sovereign immunity.[46]

Specifically, Trooper Pavelko argues that although Pennsylvania has waived immunity from suit for its officials and employees acting within the scope of their authority or employment with respect to certain tort claims, the state-law claims asserted by plaintiff against Trooper Pavelko are not subject to Pennsylvania's waiver of sovereign immunity.[47]

Plaintiff does not contend that Pennsylvania has waived sovereign immunity with respect to claims of defamation, false-light invasion of privacy, or intentional infliction of emotional distress.[48]  Rather, plaintiff argues that sovereign immunity only applies to Pennsylvania's officials and employees when "acting within the scope of their duties",[49] and contends that plaintiff's defamation, false-light invasion of privacy, and intentional infliction of emotional distress claims are based upon actions taken outside the scope of Trooper Pavelko's official authority.

---

[46]        Pavelko Memorandum at pages 6-7 (citing, among others, 1 Pa.C.S.A. § 2310; 42 Pa.C.S.A. § 8522(b)).

[47]        Id.

[48]        Plaintiff's Memorandum Opposing Pavelko Motion at pages 9-10.

[49]        Plaintiff's Memorandum Opposing Pavelko Motion at pages 9-10, quoting Faust v. Department of Revenue, 592 A.2d 835, 839 (Pa.Commw.Ct. 1991) (emphasis in original).

The doctrine of sovereign immunity, codified at
42 Pa.C.S.A. § 8522,[50] protects the Commonwealth of Pennsylvania
and Commonwealth parties from suit unless the cause of action
falls within one of several statutory exceptions (none of which
plaintiff contends are applicable here), or the individual's
conduct falls outside the scope of his employment. Savage v.
Judge, 2007 WL 29283, at *5 (E.D.Pa. Jan.2, 2006)(McLaughlin,
J.)(citing Stackhouse v. Pennsylvania, 892 A.2d 54, 58-59 n.5
(Pa.Commw.Ct. 2006)). Sovereign immunity is available as a
defense to alleged violation of state constitutional rights and
intentional tort claims. Faust v. Commonwealth of Pennsylvania,
140 Pa.Commw. 389, 397-398, 592 A.2d 835, 839-840 (1991).

Plaintiff does not contend that his state-law claims
against Trooper Pavelko fall within one of the exceptions to

---

[50]        Section 8522(a) provides:

The General Assembly, pursuant to section 11 of Article I of the
Constitution of Pennsylvania, does hereby waive, in the instances
set forth in subsection (b) only and only to the extent set forth
in this subchapter and within the limits set forth in section
8528 (relating to limitations on damages), sovereign immunity as
a bar to an action against Commonwealth parties, for damages
arising out of a negligent act where the damages would be
recoverable under the common law or a statute creating a cause of
action if the injury were caused by a person not having available
the defense of sovereign immunity.

42 Pa.C.S.A. § 8522(a).

        Section 8522(b) sets forth the nine categories where sovereign
immunity is waived with respect to the Commonwealth of Pennsylvania and its
employees, namely: vehicle liability; medical-professional liability; care,
custody or control of personal property; Commonwealth real estate, highways
and sidewalks; potholes and other dangerous conditions; care, custody or
control of animals; liquor store sales; National Guard activities; and
toxoids and vaccines. 42 Pa.C.S.A. § 8522(b).

sovereign immunity enumerated in 42 Pa.C.S.A. § 8522(b).  Thus,

Trooper Pavelko is protected by sovereign immunity if it is

determined that he was acting within the scope of his duties.

Under Pennsylvania law, conduct is within the scope of

employment where it:

> (1) is of the kind that the employee-defendant is
> employed to perform; (2) occurs substantially within
> the job's authorized time and space limits; (3) is
> motivated at least in part by a desire to serve the
> employer; and (4), if force was used by the employee
> against another, the use of force is not unforeseeable
> by the employer.

Mitchell v. Luckenbill, 680 F.Supp.2d 672, 682 (M.D.Pa.

2010)(Vanaskie, J.).

"[W]illful misconduct does not vitiate a Commonwealth

employee's immunity if the employee is acting within the scope

of his employment, including intentional acts which cause

emotional distress."  Id.

Plaintiff argues that Trooper Pavelko's official

capacity was that of an investigator and he was not acting in an

investigative capacity when he published defamatory information,

cast plaintiff in a false light, and/or intentionally caused

plaintiff to suffer emotional distress.[51]  However, plaintiff has

---

[51]     Plaintiff's Memorandum Opposing Pavelko Motion at page 10.
Indeed, plaintiff argues that Trooper Pavelko admitted in his memorandum that
his "official duties were limited to investigation of the incident and not
the spread of defamatory information to the press present at the scene."
(Id.)

(Footnote 51 continued):

not provided, and this court has not located, legal authority supporting the proposition that a police officer acts outside the scope of his employment if he communicates with the media concerning an incident under investigation.

In his Amended Complaint, plaintiff alleges that "[o]n April 19, 2012, shortly after plaintiff was [T]asered over the edge of the bridge", defendants (including Trooper Pavelko) "provided false and misleading statements to local media outlets, including but not limited to the Reading Eagle Newspaper and Channel 69 Television News" including the allegation that "[p]laintiff intentionally jumped off the West Shore Bypass."[52]

Plaintiff does not aver that Trooper Pavelko spoke to those, or any other media outlets, about the April 19, 2012 incident while out of his Pennsylvania State Police uniform or off-duty, or that any statement made to the media by Trooper Pavelko were made in his capacity as a private citizen rather than a member of the Pennsylvania State Police.

---

(Continuation of footnote 51):

This interpretation of Trooper Pavelko's memorandum is unavailing. The essence of Trooper Pavelko's argument is that the actions upon which plaintiff's defamation, false light, and intention infliction of emotional distress claims are based were taken during and within the scope of the investigation of the April 19, 2012 incident. (See Pavelko Memorandum at pages 6-7.)

[52]    Amended Complaint at ¶¶ 41-42.

Rather, plaintiff avers that "Defendant Pennsylvania State Trooper Michael Pavelko, a Pennsylvania State Trooper with the Pennsylvania State Police...was in the employment of the Commonwealth of Pennsylvania and the Pennsylvania State Police at all times material hereto."[53]

Moreover, plaintiff avers that

> *[a]t all times material and relevant hereto*, all *[d]efendants acted in concert* and conspiracy with each other *to* improperly and/or falsely arrest, assault and batter, search, imprison, *inflict emotional distress, defame*, inflict cruel and unusual punishment, conspire to falsely accuse, improperly interfere with an official investigation, obstruct justice, tamper with witnesses, invade the privacy of [p]laintiff, *and otherwise deprive [p]laintiff of rights guaranteed by the laws and Constitution of the Commonwealth of Pennsylvania* and the U.S. Constitution *while acting within the course and scope of their agency, servitude and/or employment.*[54]

Additionally, plaintiff avers that, "[a]t all times material hereto, all [d]efendants [(including Trooper Pavelko)] were acting under the color of state law."

Because the averments in plaintiff's Amended Complaint, even when all reasonable inferences are drawn in plaintiff's favor, do not support a plausible claim that Trooper Pavelko was acting as private individual rather than a member of Pennsylvania State Police when he took the actions from which plaintiff's claims arise, I grant Trooper Pavelko's motion to

---

[53]    Amended Complaint at ¶ 19.

[54]    Id. at ¶ 27 (emphasis added).

dismiss plaintiff's state-law claims based upon sovereign immunity.  See Mitchell, 680 F.Supp.2d at 683.

### Supplemental Arguments

As noted in the Procedural History section above, my August 21, 2013 Order offered the parties an opportunity to provide an update on the status of the state-court criminal proceedings against plaintiff (including the status of any appeal therefrom) and to discuss the impact of the present status of those proceedings on the within motions to dismiss pending in this case.

Trooper Pavelko plainly, and plaintiff essentially, complied with that Order and provided a status update (that plaintiff entered pleas of nolo contendere and was sentenced on several criminal charges, and that no appeal is pending concerning that criminal proceeding) and discussed the impact plaintiff's plea and sentencing on the within motions to dismiss.

The Reading Defendants' Supplemental Brief raised new arguments which were not included in the Reading Defendants' Brief in support of their motion to dismiss the Amended Complaint.  Specifically, the Reading defendants argue that (1) defendant Officer Errington was entitled to use force against plaintiff as matter of law, (2) that Officer Errington is entitled to qualified immunity, and (3) that plaintiff's fails

-33-

to sufficiently plead any <u>Monell</u>[55] claim against the municipal entity defendants.

Because these arguments were not raised by the Reading Defendants in their opening brief and the August 21, 2013 Order did not invite or permit the parties to raise arguments which could have been, but were not, raised previously, I dismiss their motion to dismiss to the extent it is based upon those arguments, without prejudice for the Reading Defendants' to raise to those arguments if appropriate in a motion for summary judgment following the close of discovery.

However, the Reading Defendants' Supplemental Brief does raise an argument which is based upon plaintiff's nolo contendere pleas and, therefore, within the scope of the August 21, 2013 Order.

Specifically, the Reading Defendants contend that <u>Heck v. Humphrey</u>,[56] and its progeny, limit the causes of action available under 42 U.S.C. § 1983 to plaintiffs who pled guilty to related criminal charges,[57] and under Pennsylvania law a plea of nolo contendere has the same effect as a plea of guilty.

More specifically, the Reading Defendants state that "[i]t has long been consistently held in Pennsylvania that in

---

[55]     Reading Defendants' Supplemental Brief at pages 3-7.

[56]     512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

[57]     Reading Defendants' Supplemental Brief at page 2.

terms of its effect on a case, a plea of nolo contendere is treated the same as a guilty plea."[58]  Similarly, the Reading Defendants state that "a criminal defendant who offers a plea of nolo contendere to a given charge stands in the same shoes as one who has been convicted of the charged offense."[59]

Accordingly, the Reading Defendants argue, plaintiff cannot contest that he committed two felonies and created great danger to civilians and the police officers involved in the April 19, 2012 incident.[60]

However, as noted above,[61] under Pennsylvania law, "[a] plea of nolo contendere is 'a plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of sentencing to treat him as if he were guilty.'"  Lewis, 791 A.2d at 1234 (quoting Alford, 400 U.S. at 36, 91 S.Ct. at 167, 27 L.Ed.2d at 170).

Indeed, as the court stated in Moser, "[because] a guilty plea constitutes an express concession of guilt, it is construed as a statement against interest admissible in a subsequent proceeding....The nolo contendere plea, on the other

---

[58]      Reading Defendants' Supplemental Brief at page 3 (quoting Kist v. Fatula, 2007 WL 2404721, *7 (W.D.Pa. Aug 17, 2007).

[59]      Id. at page 3 (quoting Moser v. Bascelli, 879 F.Supp. 489, 493 (E.D.Pa. 1995)(Joyner, J.)).

[60]      Reading Defendants' Supplemental Brief at pages 2-3.

[61]      See footnote 20, supra.

hand, is an implied admission relevant only to the criminal proceeding, and so would not be admissible in [plaintiff's] civil trial." <u>Moser</u>, 879 F.Supp at 492.

Plaintiff's pleas of nolo contendere in his state court criminal proceeding waived his right to a trial on the criminal charges and allowed the state court to sentence him. However, those pleas of nolo contendere do not constitute an admission by plaintiff to the conduct which defendants attribute to him. The Reading Defendant's Supplemental argument that plaintiff's nolo contendere pleas are effectively admissions of guilt and admissions of the underlying conduct is unavailing.[62]

## CONCLUSION

For the reasons expressed above, the Motion to Dismiss of the Reading Defendants and the Motion to Dismiss of Trooper Pavelko are each granted in part and denied in part.

Specifically, the Motion to Dismiss of the Reading Defendants is granted as unopposed to the extent that it seeks to dismiss plaintiff's claims for violation of his rights under

---

[62]     Although this particular argument advanced by the Reading Defendants Supplemental Brief is unavailing, I note that "[u]nder <u>Heck</u>, a § 1983 action that impugns the validity of the plaintiff's underlying conviction cannot be maintained unless the conviction has been reversed on direct appeal or impaired by collateral proceedings." <u>Giles v. Davis</u>, 427 F.3d 197, 209 (3d Cir. 2005). Here, plaintiff's nolo contendere has not been withdrawn or otherwise impaired by a collateral appeal.

        However, I will not dismiss plaintiff's claims based upon <u>Heck</u> because it is not clear, at this stage of the litigation, that plaintiff's claims would impugn the validity of his plea and sentence in the underlying criminal proceeding. However, nothing in this Opinion precludes defendants from raising an argument based upon <u>Heck</u> at summary judgment if appropriate.

the Eighth Amendment to the United States Constitution. Accordingly, I dismiss in its entirety Count II of the Amended Complaint, and I dismiss plaintiff's claims for violation of his Eighth Amendment rights from Count III.

Moreover, the Motion to Dismiss of Trooper Pavelko is granted to the extent that it seeks to dismiss plaintiff's Pennsylvania state-law claims of defamation, false-light invasion of privacy and intentional infliction of emotional distress based upon sovereign immunity. Accordingly, I dismiss those claims only against defendant Trooper Pavelko from Count VI of the Amended Complaint.

However, the Motion to Dismiss of the Reading Defendants and the Motion to Dismiss of Trooper Pavelko are denied in all other respects.