UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ERNEST MARTIN,                                          :
                                                        :
                          Plaintiff,                    :
                  v.                                    :        No. 5:12-cv-03665
                                                        :
CITY OF READING; READING POLICE                         :
DEPARTMENT; WILLIAM HEIM, Chief of                      :
Police of the Reading Police, individually and          :
in his official capacity; OFFICER BRIAN                 :
ERRINGTON, individually and in his official             :
capacity; CAPTAIN DAMON[1] KLOC,                        :
individually and in his official capacity;              :
PA STATE TROOOPER MICHAEL                               :
PAVELKO; JOHN DOES 1-9,                                 :
                                                        :
                          Defendants.                   :
_____

**MEMORANDUM OPINION**

**Joseph F. Leeson, Jr.**                                            **August 7, 2015**
**United States District Judge**

**I.      Introduction**

On April 19, 2012, Plaintiff fell from the West Shore Bypass, an elevated portion of U.S.

Route 422 that passes through the Borough of West Reading, Pennsylvania and landed forty feet

below on a concrete surface. See Am. Compl. ¶ 29, ECF No. 21. This action arises out of the

circumstances that led to his fall.

Plaintiff claims that Defendant Brian Errington, a police officer employed by the City of

Reading, caused him to fall after Defendant Errington "shot Plaintiff with a taser/stun gun while

_____
[1]      Plaintiff's initial Complaint and Amended Complaint specified this Defendant's name as "Damon Kloc,"
but the correct spelling of his first name appears to be "Damond." See, e.g., Reading Defs.' Br. Supp. Mot. Summ. J.
1, ECF No. 87-2.

Plaintiff stood at the side of the West Shore Bypass." Id. ¶¶ 7, 29. Plaintiff claims that he

suffered serious and permanent injuries, including permanent damage to his liver, a fracture to

his pelvis, and numerous fractured ribs. Id. ¶ 30. He was treated for his injuries in the intensive

care unit at Reading Hospital and Medical Center and has undergone a number of surgical

procedures. Id. ¶ 31. At the time of his complaint, he alleged that he was dependent upon a

ventilator and a feeding tube and expected months of additional hospitalization. See id.

Based on these events, Plaintiff claims that, pursuant to 42 U.S.C. § 1983, Defendant

Errington used excessive force against him in violation of his Fourth Amendment rights, as

incorporated against the states by the Fourteenth Amendment, and that Defendant Errington

committed the torts of assault and battery.[2]

Presently before the Court are the parties' pretrial evidentiary motions.

## II.     Plaintiff's Pretrial Motions

## 1.     Motion to Preclude Defendants'[3] Expert, Mark Kroll

Plaintiff seeks to preclude Defendant Errington's expert, Mark Kroll, from "presenting

any testimony, opinions, or evidence at trial." Mr. Kroll's "scientific specialty is bioelectricity or

the interaction of electricity and the body." Defs.' Resp. Opp'n Pl.'s Mot. Ex. B, at 25, ECF No.

105-2.  His expert report contains thirteen separate opinions, including his opinions on whether

Defendant Errington's Taser immobilized Plaintiff, how far Plaintiff was from the edge of the

West Shore Bypass at the time he was struck by Defendant Errington's Taser, and whether the

Taser caused Plaintiff to fall from the West Shore Bypass.

---

[2]     Plaintiff had also asserted various other claims against both Defendant Errington and other defendants to
this action, which no longer form part of this action following this Court's disposition of the parties' respective
motions for summary judgment. See Martin v. City of Reading, No. 12-cv-03665, 2015 WL 4601120 (E.D. Pa. July
31, 2015). After that disposition, these three claims remain.
[3]     Plaintiff's pretrial motions were filed before the Court's disposition of the parties' respective summary
judgment motions, which resulted in judgment for all defendants with the exception of Defendant Errington.
Therefore, Plaintiff's motions refer to "Defendants," rather than to only Defendant Errington.

Plaintiff contends that one of Mr. Kroll's opinions, which relates to the distance between Plaintiff and the edge of the West Shore Bypass at the time he was struck by Defendant Errington's Taser, is based on "pure speculation," "twists the testimony of multiple witnesses," and is contrary to evidence that "clearly shows that Mr. Martin was positioned . . . near the very edge of the bridge" when he was struck by Defendant Errington's Taser. See Pl.'s Br. Supp. Mot. 4, ECF No. 94. Mr. Kroll's opinion is that Plaintiff was approximately ten to fifteen feet from the edge of the West Shore Bypass when he was struck by Defendant Errington's Taser, which Plaintiff contends is contradicted by the testimony of witness Alexis Vidal, who testified that Plaintiff was "right before the railing" when he was struck by Defendant Errington's Taser. See id. at 5. Plaintiff argues that because "nearly all of Mr. Kroll's other opinions rely on this false assumption, the entirety of his report is invalid and unreliable and, therefore, cannot be used as the basis for any determination." See id. at 4.

Mr. Kroll's estimation of Plaintiff's distance from the edge of the West Shore Bypass is based on testimony from two witnesses regarding the location of Defendant Errington when he deployed his Taser. See Defs.' Resp. Opp'n Ex. B, at 12. With that information as a starting point, Mr. Kroll then proceeds to calculate the location of Plaintiff based on the distance between the two points of impact on Plaintiff's body from the Taser probes fired from Defendant Errington's weapon.[4]

Defendant Errington observes that "Plaintiff does not contend that Dr. Kroll is not qualified, nor does Plaintiff argue with his methodology" and argues that "if Plaintiff contends that Dr. Kroll's factual predicate is incorrect, then he can cross-examine Dr. Kroll at trial." See Defs.' Resp. Opp'n 1-2, ECF No. 105. Defendant Errington therefore contends that Plaintiff's

---

[4]     Mr. Kroll explains in an earlier portion of his expert report that the distance between a Taser and a target can be calculated by reference to the "spread" at the point of impact between the two Taser probes, because the probes travel at an angle of eight degrees after being fired from the Taser. See Defs.' Resp. Opp'n Ex. B, at 10.

critique of Mr. Kroll's opinion "goes to the issue of credibility and the weight a jury places on Dr. Kroll's opinions, not on whether he should be permitted to testify." <u>See id.</u> at 2.

The United States Court of Appeals for the Third Circuit has recognized that "it is for the trier of fact to determine the weight to be accorded, and the sufficiency of, the evidence upon which [an] expert relie[s]." <u>See Walker v. Gordon</u>, 46 F. App'x 691, 692 (3d Cir. 2002) (affirming a district court's denial of a motion in limine that sought to preclude the testimony of an expert witness based on "objections to the evidence upon which [the expert] based his conclusions rather than objections to the methodology employed"). Thus, an expert is free "to base his opinion on a particular version of disputed facts," and the burden is on opposing counsel to "explor[e] the facts and assumptions underlying the testimony of an expert witness . . . during cross examination." <u>See id.</u> at 696 (quoting <u>Stecyk v. Bell Helicopter Textron, Inc.</u>, 295 F.3d 408, 414 (3d Cir. 2002)). Here, Plaintiff's objections do not call into question Mr. Kroll's ability to testify as an expert pursuant to Federal Rule of Evidence 702; rather, Plaintiff's objections to the factual bases of Mr. Kroll's opinion are a proper subject for cross examination. Therefore, Plaintiff's Motion is denied.

**2.     Motion to Preclude Defendants from Offering Any Evidence of Mr. Martin's Criminal Background or Attempting to Impeach Plaintiff's Testimony with Evidence of His Prior Criminal Convictions**

Plaintiff seeks to preclude Defendant Errington from "offering any evidence of Mr. Martin's criminal background or otherwise attempting to impeach Plaintiff's testimony at trial with evidence of his prior criminal convictions." <u>See</u> Pl.'s Br. Supp. Mot. 2, ECF No. 100. Plaintiff's prior convictions include "assault, fleeing or attempting to elude officers, receiving stolen property, theft by unlawful taking, resisting arrest, robbery, and use or possession of drug paraphernalia," <u>see id.</u> at 8, most of which "occurred between 7 and 9 years ago," <u>see id.</u> at 6.

Plaintiff seeks to preclude this evidence for two separate reasons: First, Plaintiff seeks to preclude this evidence pursuant to Federal Rule of Evidence 404(b), which prohibits the introduction of evidence of a "crime, wrong, or other act" that is introduced solely for the purpose of "prov[ing] a person's character" in order to create an inference that the person acted in conformity with that character. Fed. R. Evid. 404(b). Plaintiff contends that Defendant Errington "will likely attempt to offer evidence or testimony with regard to Plaintiff's . . . criminal background in order to undermine Plaintiff's character and show that he was acting in accordance with that character on the date of the incident." See Pl.'s Br. Supp. Mot. 3.

Second, Plaintiff seeks to preclude this evidence pursuant to Rule 609, which regulates the use of evidence of prior criminal convictions to impeach a witness's credibility. Plaintiff intends to testify at trial "to explain his injuries and treatment as well as to dispute some of the factual inaccuracies regarding the April 19, 2012 incident that he can remember." See id. at 6. Plaintiff argues that the value of these prior convictions for impeachment purposes is substantially outweighed by the prejudicial effect this evidence would have on Plaintiff's claims.

Defendant Errington responds that these convictions are relevant for a purpose other than to support an inference that Plaintiff was acting in accordance with his character: namely, to supply a motive for Plaintiff to have been willing to take "desperate measures to avoid capture from the police in this instance," which in turn supports Defendant Errington's contention that Plaintiff's fall from the West Shore Bypass was voluntary, rather than the result of Plaintiff being struck by Defendant Errington's Taser. See Defs.' Br. Opp'n Pl.'s Mot. 2, ECF No. 107. Defendant Errington also contends that these convictions are admissible under Rule 609 to impeach Plaintiff's credibility, because the probative value of these convictions on the question of Plaintiff's credibility is not substantially outweighed by prejudice to Plaintiff.

5

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted accordance with the character." Fed. R. Evid. 404(b). Such evidence is admissible for other purposes, however, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." See id. 404(b)(2); see United States v. Green, 617 F.3d 233, 249 (3d Cir. 2010) ("[T]he purpose of Rule 404(b) is 'simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person . . . . No other use of prior crimes or other bad acts is forbidden by the rule' . . . ." (quoting United States v. Taylor, 522 F.3d 731, 735-36 (3d Cir. 2008)). To be admissible for a permitted purpose under Rule 404(b), evidence of prior bad acts "must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." See Green, 617 F.3d at 249 (citing United States v. Butch, 256 F.3d 171, 175 (3d Cir. 2001)); Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520-21 (3d Cir. 2003) ("[A] court must be able to articulate a way in which the tendered evidence logically tends to establish or refute a material fact in issue, and that chain of logic must include no link involving an inference that a bad person is predisposed to do bad acts." (quoting Gov't of the V.I. v. Pinney, 967 F.2d 912, 915 (3d Cir. 1992))).

Here, Plaintiff's criminal history is relevant for a purpose other than to make a prohibited character inference: his extensive criminal history supplies a motive for Plaintiff to have intentionally leapt from the West Shore Bypass despite the grave risk of harm he would have faced. Defendant Errington does not seek to create an inference that Plaintiff was "predisposed to do bad acts"; Plaintiff's alleged "bad acts"—the theft of an automobile and flight from police— are ancillary to the central factual dispute in this action: the cause of Plaintiff's fall from the

West Shore Bypass. Thus, the inference Defendant Errington seeks to create concerns not Plaintiff's predisposition to engage in bad acts, but whether Plaintiff would have been inclined to take a particular action during the course of those bad acts.

This evidence is relevant to the factual question at the heart of Plaintiff's claims, and the potential prejudice to Plaintiff thus does not substantially outweigh the probative value of this evidence on that central question. See Fed. R. Evid. 403. Moreover, the prejudicial effect of this evidence is limited because the fact that Plaintiff may have been engaging in criminal conduct at the time of the incident is secondary to the dispute of the cause of Plaintiff's fall from the West Shore Bypass. See Sharif v. Picone, 740 F.3d 263, 273 (3d Cir. 2014) (recognizing that the prejudice caused by the introduction of evidence of prior convictions depends upon how "closely related to the issue at trial" such convictions are). Because evidence of Plaintiff's criminal history is relevant for a purpose other than to cast doubt on Plaintiff's character, and because the probative value of this evidence is not substantially outweighed by its prejudicial effect, Plaintiff's Motion is denied.

**3.      Motion to Preclude Defendants from Offering Any Evidence at Trial Regarding the Events That Occurred Before Plaintiff Reached the West Shore Bypass Bridge**

Plaintiff seeks to preclude Defendant Errington from "offering any evidence at trial regarding the events that occurred before Plaintiff reached the West Shore Bypass." See Pl.'s Br. Supp. Mot. 1, ECF No. 101. In the alternative, Plaintiff seeks to preclude "any testimony or evidence at trial with regard to any events that occurred before Officer Errington first received an alleged radio call from Officer Gonzalez" informing him that Plaintiff had allegedly stolen an automobile. See id. at 4.

Plaintiff argues that "the only facts and circumstances relevant to determining the objective reasonableness of [Defendant Errington's] conduct are those events that occurred

immediately before Defendant Officer Errington shot Plaintiff with a Taser" and that "[t]he few events that occurred before Plaintiff reached the bridge . . . would simply present too attenuated a connection to the officer's subsequent use of force against Mr. Martin." See id. at 3-4. In the alternative, Plaintiff seeks to preclude only evidence regarding events that were not known to Defendant Errington at the time he used his Taser, because the "only facts relevant to determining the objective reasonableness of Officer Errington's conduct are those about which Officer Errington was aware." See id. at 4.

With respect to Plaintiff's request to exclude evidence of all events that occurred prior to Defendant Errington's use of his Taser, Defendant Errington contends that the constitutional reasonableness of his use of force depends upon the circumstances under which he used that force. Therefore, "[t]he facts and information which Officer Errington knew, believed and was told, leading up to his actions, are a critical part of his decision making process." See Defs.' Br. Opp'n Pl.'s Mot. 6, ECF No. 109.

With respect to Plaintiff's alternative request to exclude only evidence of prior events that were not known to Defendant Errington at the time he used his Taser, Defendant Errington contends that Plaintiff "placed the entire incident at issue" by virtue of Plaintiff's claim that Defendants conspired to cover-up information about Defendant Errington's use of force, which makes this information relevant to that claim. That claim, however, is no longer before the Court following the Court's disposition of the parties' motions for summary judgment.

The Court of Appeals for the Third Circuit has held that, when assessing a claim that a police officer used excessive force, the factfinder must consider "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." See Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (contrasting this approach with the decision

of other courts to "'freeze the time frame' and consider only the facts and circumstances at the precise moment that excessive force is applied"). Therefore, information known to Defendant Errington prior to his use of his Taser is relevant to the question of whether his use of force was reasonable.

With respect to Plaintiff's request to exclude evidence only of information not known to Defendant Errington at the time he deployed his Taser, Plaintiff is correct that the reasonableness of Defendant Errington's use of force is "based upon the information the officer[] had when the conduct occurred." See Saucier v. Katz, 533 U.S. 194, 207 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009); see also Randall v. Williamson, 211 F. App'x 565, 567 (9th Cir. 2006) (evaluating a claim of excessive force without reference to evidence that the arrestee was under the influence of drugs and alcohol, of which the officer was not aware at the time he used force on the arrestee). However, this evidence is relevant for a separate reason: to provide evidentiary support for Defendant Errington's contention that Plaintiff had stolen an automobile, which in turn supports his contention that Plaintiff voluntarily leapt from the West Shore Bypass to evade arrest. If Plaintiff elects at trial to concede that he was engaged in those criminal acts at the time Defendant Errington deployed his Taser, Defendant Errington's need for this evidence may be diminished to the point that the probative value of this evidence is outweighed by the prejudice this evidence may present. At this time, however, the Court cannot say that this evidence is not relevant to the factual disputes in this case or that the prejudicial effect this evidence may have substantially outweighs the probative value of the evidence. See Fed. R. Evid. 401, 403. Therefore, Plaintiff's Motion is denied.

4.      **Motion to Preclude Defendants from Offering Any Evidence at Trial or Making Any Reference to Alleged Drug Paraphernalia Found at the Scene**

Plaintiff seeks to preclude Defendant Errington from "offering any evidence at trial or making any reference to alleged drug paraphernalia found at the scene." See Pl.'s Br. Supp. Mot. 3, ECF No. 102. Plaintiff states that the Reading Police Report and the Pennsylvania State Police Report "each make reference to an alleged drug paraphernalia supposedly found at the scene, described variously in the reports as either a 'makeshift marijuana pipe' and a 'smashed crack pipe.'" See id. at 2.

Plaintiff seeks to preclude this evidence because "this alleged 'pipe' has never been produced to Plaintiff's counsel, and . . . was not even recovered by Defendants, . . . there has been no testing produced to Plaintiff's counsel indicating that there were any drugs in the alleged 'pipe', . . . Plaintiff was not tested for drugs and no evidence exists whatsoever that Plaintiff was on drugs at the time the incident occurred," and "there is no evidence to show that Plaintiff used drugs." See id. at 5. This motion is unopposed, and accordingly, Plaintiff's Motion is granted.

5.      **Motion to Preclude Defendants from Presenting Any Evidence or Testimony from Gladys Painter or Barbara Ann Fair at Trial**

Plaintiff seeks to preclude Defendant Errington from offering evidence or testimony at trial from witnesses Gladys Painter and Barbara Ann Fair, who were the victims from whom Plaintiff allegedly stole the automobile that he drove to the West Shore Bypass. As with Plaintiff's motion to preclude Defendant Errington from introducing evidence regarding information that he did not possess at the time he deployed his Taser, Plaintiff argues that the testimony of these two witnesses is not relevant to the reasonableness of Defendant Errington's use of force. See Pl.'s Br. Supp. Mot. 7, ECF No. 103 (contending that the events to which these witnesses would testify "could not have possibly formed the basis of Defendant Errington's

decision to use force, and thus are wholly irrelevant"). But as with Plaintiff's motion to preclude evidence not known to Defendant Errington, this evidence may be relevant to support Defendant Errington's contention that Plaintiff had stolen an automobile, which in turn supports his contention that Plaintiff voluntarily leapt from the West Shore Bypass to evade arrest. At this time, therefore, the Court cannot say that this evidence is not relevant to the factual disputes in this case or that the prejudicial effect this evidence may have substantially outweighs the probative value of the evidence. Therefore, Plaintiff's motion is denied.

**6.      Motion to Preclude All Defendants from Offering into Evidence the "Integrated Case Summary – 13A Parole Summary"**

Plaintiff seeks to preclude Defendant Errington from offering into evidence a document entitled "Integrated Case Summary – 13 A Parole Summary," which contains statements that Plaintiff allegedly made during an interview with a parole officer regarding his recollection of the events in question in this action.

Plaintiff argues that the statements are hearsay, and that the statements do not fall within the exception to the definition of hearsay for "party admissions" under Federal Rule of Evidence 801(d)(2)(A). Plaintiff claims that he "had no actual memory of the events" at the time he made these statements, and that, therefore, his statements to the parole officer were simply a "regurgitation of the police report," which does not constitute a party admission. See Pl.'s Br. Supp. Mot. 7, ECF No. 104. Defendant Errington contends that these statements are party admissions within the scope of Rule 801(d)(2)(A).

Rule 801(d)(2) exempts from the definition of hearsay any statement "offered against an opposing party" that "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). The Court of Appeals for the Third Circuit has recognized that "[a]dmissions by a party-opponent need not be based on personal knowledge to be admitted under Rule

11

801(d)(2)"; therefore, the mere fact that Plaintiff's statements may have been a "regurgitation" of the police report does not mean that these statements fail to qualify as party admissions. See Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 96 (3d Cir. 1999); see also United States v. Billingsley, 160 F.3d 502, 504-05 (8th Cir. 1998) (concluding that recorded statements made by a criminal defendant who was acting as an informant during a conversation with the defendant's heroin supplier constituted party admissions despite the fact that "he was only saying what the police asked him to say"). Accordingly, Plaintiff's statements do not fall within the definition of hearsay, and Plaintiff's Motion is denied.

## II.     Defendant Errington's Pretrial Motions

## 1.     Motion to Partially Preclude Plaintiff's Expert, Robert Johnson (ECF No. 83)

Defendant Errington seeks to preclude Plaintiff's expert, Robert Johnson, from offering opinions regarding "the scientific operation and effect of how a Taser works and its impact on the body."[5] Def.'s Br. Supp. Mot. 4, ECF No. 83. Mr. Johnson's background includes "forty-three years in law enforcement" with "thirty-two years in active service in a variety of positions/ranks." See id. Ex. A, at 1. Mr. Johnson's opinions include the following: a Taser is "a very effective weapon in causing neuromuscular incapacitation"; the "probes of the Taser do not have to penetrate the skin to result in neuromuscular incapacitation"; the "probes can arc through clothing"; when a Taser is used in "probe" mode, the "probes do not leave signature marks (contact burn marks)"; and "the probes made contact with and imbedded in [Plaintiff's] clothing, [which] was sufficient to cause [neuromuscular incapacitation]." See id. Ex. A, at 9-10.

---

[5]     Defendant Errington also seeks to preclude Mr. Johnson from testifying about the "quality of the Reading Defendants' criminal and internal investigation of the incident," but this objection is moot in light of the Court's entry of summary judgment in favor of all defendants to this action on Plaintiff's claims that arose out of the conduct of the police investigation into the circumstances of Plaintiff's fall from the West Shore Bypass. See supra note 2.

Defendant Errington argues that Mr. Johnson is "wholly unqualified to render . . . a scientific opinion regarding the use of effect of a Taser" because his opinions are "solely based on his general experience with a Taser in his role as a police officer." See id. at 4, 8. Plaintiff responds that Mr. Johnson's opinions are "based upon his extensive experience in law enforcement, including his own training and use of Tasers," and that "Mr. Johnson does not have to be qualified as a 'scientific' expert to testify that a Taser causes neuromuscular incapacitation, that the probes of a Taser do not have to penetrate the skin but rather can arc through clothing to incapacitate an individual, or that Taser probes do not leave contact burn marks." See Pl.'s Mem. Opp'n Def.'s Mot. 5-8, ECF No. 88.

While Mr. Johnson's training and experience in the use and operation of Tasers in connection with his employment may provide a sufficient basis for him to opine about certain capabilities of a Taser and the effects a Taser may have on a target, the Court requires further information about the nature and extent of his training and experience to determine whether Mr. Johnson is sufficiently qualified to render each of the opinions contained in his expert report. See Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) ("By means of a so-called 'Daubert hearing,' the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." (citing Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592 (1993))). Accordingly, the Court defers rendering a decision on Defendant Errington's Motion at this time pending a hearing to assess Mr. Johnson's qualifications.

**2.      Motion to Preclude Plaintiff's Expert, Kathleen Murray, R.N.**

Defendant Errington seeks to preclude Plaintiff from offering the testimony of Kathleen Murray, a certified registered nurse practitioner. Plaintiff intends for Ms. Murray to testify about

"Plaintiff's injuries, diagnoses, and future treatment." <u>See</u> Pl.'s Br. Opp'n Def.'s Mot. 6, ECF No. 97. Ms. Murray's opinions are based on her review Plaintiff's medical records and in-person examination of Plaintiff.

Defendant Errington contends that Ms. Murray is not qualified to opine on the diagnoses "of various medical and psychiatric diseases," <u>see</u> Def.'s Br. Supp. Mot. 5, ECF No. 89, and argues that, as a nurse, she is not permitted under Pennsylvania law to engage in "acts of medical diagnosis," <u>see id.</u> (quoting 63 Pa. Stat. Ann. § 212(1)). Defendant Errington further argues that Ms. Murray "does not practice in rehabilitation, nor is she an expert in nursing rehabilitation." <u>See id.</u> Defendant Errington also contends that Ms. Murray's opinions are not reliable, because she does not set forth the "basis and reasons" for her opinions and did not "administer any testing on the Plaintiff, either medical or psychological, to support her diagnoses." <u>See id.</u> at 7.

Plaintiff asserts that Ms. Murray's twenty-five years of experience in the field of nursing, status as a certified registered nurse practitioner in the area of adult health, and experience in the fields of "surgery, telemetry, trauma care, intensive care, mental health, and substance abuse" qualify her to render opinions on Plaintiff's injuries, diagnoses, and future treatment. <u>See</u> Pl.'s Br. Opp'n Def.'s Mot. 4. Plaintiff also observes that, under Pennsylvania law, a nurse practitioner, by contrast to an ordinary nurse, is in fact authorized to engage in "acts of medical diagnosis."[6] With respect to the reliability of Ms. Murray's opinions, Plaintiff contends that her "experienced review of Plaintiff's medical records and history as well as an actual physical

---

[6]     As Plaintiff points out, Defendant Errington quotes from an outdated provision of Pennsylvania law, which had prohibited all nursing professionals from engaging in "acts of medical diagnosis or prescription of medical therapeutic or corrective measures, except as may be authorized by rules and regulations jointly promulgated by the State Board of Medicine and the Board." <u>See</u> 2002 Pa. Laws 1567 (amending 63 Pa. Stat. Ann. § 212(1)). In 2002, this provision was amended to provide an exception to this prohibition for acts "performed by <u>a certified registered nurse practitioner</u> acting in accordance with rules and regulations promulgated by the Board." <u>See</u> 63 Pa. Stat. Ann. § 212(1) (West 2010) (emphasis added); <u>id.</u>

examination of Plaintiff that she performed herself" suffice to render her opinions reliable. See id. at 6-7.

Plaintiff is correct that, under Pennsylvania law, a nurse practitioner, unlike a nurse, is permitted to engage in "acts of medical diagnosis or prescription of medical therapeutic or corrective measures," see 63 Pa. Stat. Ann. § 212(1) (West 2010), and nurse practitioners and physician assistants have been qualified for the purpose of rendering opinions about the nature of particular injuries or particular diagnoses. See, e.g., Earls v. Sexton, No. 3:09cv950, 2010 WL 2179627, at *2 (M.D. Pa. May 28, 2010); Akerson v. Falcon Transp. Co., No. CV-06-36, 2006 WL 3377940, at *5 (D. Me. Nov. 21, 2006). Here, Ms. Murray's credentials as a nurse practitioner and twelve years of experience as a registered nurse in the fields of "medical-surgical, . . . trauma care, intensive care, mental health and substance abuse" are sufficient to qualify her to opine about the nature of Plaintiff's injuries and medical conditions resulting from the trauma he experienced as a result of his fall from the West Shore Bypass.

Ms. Murray's opinions are also sufficiently reliable. Ms. Murray's opinions are based on her review of Plaintiff's medical records and an in-person examination of Plaintiff, which are sufficient bases for an expert witness to opine about a person's medical condition. See In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 762 (3d Cir. 1994) ("[A] physician who evaluates a patient in preparation for litigation . . . should either examine the patient or review the patient's medical records simply in order to determine that a patient is ill and what illness the patient has contracted."); Bondach v. Faust, No. 10-2032, 2011 WL 3816998, at *3 (E.D. Pa. 2011) (citing In re Paoli, 35 F.3d at 762) (qualifying an expert based on the expert's review of "eighteen documents related to this matter" and a session of "one hour and fifteen minutes evaluating

15

Plaintiff in a one-on-one setting in his office"). Accordingly, Defendant Errington's Motion is denied.

**III.    Conclusion**

For the foregoing reasons, each of Plaintiff's pretrial motions is denied, with the exception of Plaintiff's Motion to Preclude Defendants from Offering Any Evidence at Trial or Making Any Reference to Alleged Drug Paraphernalia Found at the Scene, which is granted. With respect to Defendant Errington's pretrial motions, his Motion to Preclude Plaintiff's Expert, Kathleen Murray, R.N., is denied and the Court will conduct a Daubert hearing prior to ruling on his Motion to Partially Preclude Plaintiff's Expert, Robert Johnson. An appropriate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

16